1
2   Rhett V. Barney, WSBA #44764
    LEE & HAYES, P.C.
3   601 W. Riverside Ave., Ste. 1400
    Spokane, WA 99201
4   Phone: (509) 324-9256

5   Andrew G. Strickland, *pro hac vice* to be filed
    LEE & HAYES, P.C.
6   1175 Peachtree Street N.E.
7   100 Colony Square, Ste. 2000
    Atlanta, GA 30361
8
    *Attorneys for Plaintiff Kitchen Cabinet*
9   *Manufacturers Association*

10

11
                    **UNITED STATES DISTRICT COURT**
12                  **EASTERN DISTRICT OF WASHINGTON**

13  KITCHEN CABINET                    CASE NO. 2:19-cv-0291
14  MANUFACTURERS ASSOCIATION,
    an Illinois corporation            **COMPLAINT FOR:**
15
                Plaintiff,             **1. FEDERAL TRADEMARK**
16                                     **INFRINGEMENT;**

17          v.                         **2. COUNTERFEIT OF**
                                       **REGISTERED MARK;**
18  AAA CABINETS & MILLWORKS,
    INC., a Washington corporation;    **3. FEDERAL UNFAIR**
19  TIMOTHY STEWART and SANDRA         **COMPETITION AND FALSE**
    STEWART, individually, and the marital  **DESIGNATION OF ORIGIN AND**
20  community comprised thereof,       **FALSE AND MISLEADING**
                                       **REPRESENTATIONS;**
21              Defendants.
                                       **4. VIOLATION OF WASHINGTON**
22                                     **CONSUMER PROTECTION ACT**

23                                     **5. UNJUST ENRICHMENT**

24                                     **DEMAND FOR JURY TRIAL**

COMPLAINT FOR TRADEMARK
INFRINGEMENT AND UNFAIR COMPETITION - 1

1       Plaintiff Kitchen Cabinet Manufacturers Association, by its attorneys, for its

2   Complaint against Defendants, alleges as follows:

3                        **THE PARTIES**

4       1.      Plaintiff, Kitchen Cabinet Manufacturers Association ("KCMA" or

5   "Plaintiff"), is an Illinois not-for-profit corporation with its principal place of business

6   in Reston, Virginia.

7       2.      On information and belief, Defendant, AAA Cabinets & Millworks, Inc.

8   ("AAA") is a Washington for-profit Corporation with a principal office at 11403 W.

9   21st Ave., Airway Heights, Washington, 99001.

10      3.      On information and belief, Defendant Sandra Stewart is a resident of

11  Spokane, Spokane County, Washington, residing at 904 East 17th Avenue, Spokane

12  WA 99203. It is believed she is married to co-defendant, Timothy Stewart, and she

13  has held herself out to be a Governor of Defendant entity AAA. All actions against

14  Sandra Stewart herein are alleged against her, individually, and her marital

15  community, and all relief is sought from her and her marital community.

16      4.      On information and belief, Defendant Timothy Stewart is a resident of

17  Spokane, Spokane County, Washington, residing at 904 East 17th Avenue, Spokane,

18  WA 99203. It is believed he is married to co-defendant Sandra Stewart, and he has

19  held himself out to be a Governor of Defendant entity AAA. Mr. Stewart is responsible

20  for the day-to-day decision-making of AAA, including all those actions alleged herein

21  to be unlawful and alleged to have occurred in and affected Plaintiff's interests in

22  Washington and this judicial district. All actions against Timothy Stewart herein are

23  alleged against him, individually, and his marital community, and all relief is sought

24  from him and his marital community.

COMPLAINT FOR TRADEMARK
INFRINGEMENT AND UNFAIR COMPETITION - 2

## JURISDICTION AND VENUE

5.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1338(a) and (b), because the claims address federal questions concerning the Lanham Act, 15 U.S.C. § 1121, trademark infringement of federally registered trademarks pursuant to 15 U.S.C. § 1114, and federal unfair competition pursuant to 15 U.S.C. § 1125(a).

6.      The Court has supplemental jurisdiction over the claims arising under the laws of the state of Washington, pursuant to R.C.W.A. § 19.86.020 *et seq.,* because the state law claims are so related to the federal subject-matter claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

7.      The illegal activities involved in this action are generally straightforward and directly involve AAA, its owner and governing person Timothy Stewart, and co-governing person Sandra Stewart. AAA and the Stewarts sought certification by KCMA more than 13 years ago for a specific line of kitchen and bathroom vanity cabinets. Several months after their initial acceptance into KCMA's certification program, AAA's certification was cancelled for non-payment of fees, and AAA was removed from KCMA's list of certified cabinet manufacturers and informed it was no longer certified. Notwithstanding removal from the certification program, AAA has continued to claim and represent to its customers, and potential customers, and other third parties that it is certified by KCMA. AAA and the Stewarts have also continued to use KCMA's certification seals on its products without authorization, including use on cabinets that it never received certification for in the first place.

8.    This Court has personal jurisdiction over defendants Timothy Stewart and Sandra Stewart because they are both residents of the state of Washington and this District. These defendants have sold and distributed goods in association with the infringing marks in the state of Washington, thus purposefully availing themselves of the privilege of conducting activities in the state of Washington.

9.    This Court has specific jurisdiction over all defendants because KCMA's claims for trademark infringement, counterfeiting, and unfair competition arise from harm sustained in the state of Washington. Defendants have engaged in purposeful affirmative activity directed at the state of Washington by holding their products out to be KCMA certified and selling goods within the state of Washington with said certification.

10.    This court also has general jurisdiction over all Defendants because they have all engaged in continuous and systematic activity within the state of Washington by, on information and belief, maintaining offices in the state of Washington within this District, regularly selling goods purportedly certified by KCMA, in this State and District.

11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims occurred and are occurring in this District.

## NATURE OF THE ACTION

12.    This is an action for trademark infringement, counterfeiting, unfair competition under the Federal Trademark Act of 1946, the "Lanham Act", 15 U.S.C. § 1051, *et seq.*, violation of the Washington Consumer Protection Act, R.C.W.A. 19.86.020 *et seq,* and unjust enrichment.

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

**KCMA'S VALUABLE RIGHTS**

13.    KCMA facilitates the testing and inspections of product through its third-party providers and also certifies products and develops educational content and quality standards for cabinet manufacturers, and it has done so since 1965.

14.    Specifically, KCMA establishes and promotes standards for the kitchen cabinet industry, defends and advocates in support of the industry, creates educational and research capabilities and programs, and arms its members with valuable tools necessary to promote and grow their businesses. KCMA inspects, tests, certifies, provides advisory services, audits, and checks the marketing claims made by cabinet manufacturers throughout North America.

15.    KCMA's certification services include testing and inspecting product through KCMA's third-party providers by selecting have those third-party providers select representative product samples of its program participants to ensure that the products satisfy applicable quality standards. Companies certified by KCMA are required to renew their certifications regularly, and at each renewal are required to demonstrate continued compliance with KCMA standards.

16.    KCMA owns multiple trademark and certification marks for its certification program and association services, including the following that are relevant for this proceeding:

/ / /

COMPLAINT FOR TRADEMARK
INFRINGEMENT AND UNFAIR COMPETITION - 5

| MARK | REG. NO. | GOODS/SERVICES | REG. DATE |
|---|---|---|---|
|  | 2873502 | IC A: Kitchen and vanity cabinets<br><br>CERTIFICATION MARK | Aug. 17, 2004 |
| KCMA | 3626843 | IC: 35 Association services, namely, promoting the interests of the kitchen cabinet manufacturing industry<br><br>SERVICE MARK | May 26, 2009 |
| KITCHEN CABINET MANUFACTURERS ASSOCIATION | 3666071 | IC: 35 Association services, namely, promoting the interests of the kitchen cabinet manufacturing industry<br><br>SERVICE MARK | Aug. 11, 2009 |

The KCMA certification mark is referred to hereafter as the "KCMA Certification Mark", and the marks used with its association services are hereafter referred to as KCMA Association Marks." All of KCMA's trademarks are referred to collectively as the "KCMA Marks."

17.     Each of the above-referenced trademarks in the above chart are valid and subsisting, and they provide conclusive evidence of KCMA's exclusive right to use the KCMA Marks in commerce.

18.     KCMA has been providing testing and association services, including certifying cabinets to ensure that they comply with relevant quality standards, since at

1   least 1965. Since at least 1965, KCMA has continuously used the KCMA Marks, or

2   marks that are highly similar to them.

3       19.    KCMA formally began its certification program in 1965, and its

4   authorized participants have been using the KCMA Certification Mark, or marks

5   highly similar thereto, on products offered for sale and installed in interstate

6   commerce since at least as early as 1965.

7       20.    KCMA's hundreds of authorized participants have used KCMA's

8   KCMA Certification Mark on residential and commercial cabinet products to

9   demonstrate to their end users that the product being installed in their home, business,

10  health care facility, or other location meets applicable quality standards. The KCMA

11  Certification Mark has become so ubiquitous with high-quality and well-built cabinets

12  that informed end-users require it.

13      21.    Over the past half-century, KCMA has used its KCMA Marks to promote

14  its certification programs and association services through a wide variety of marketing

15  channels and outlets on a national, regional, and local basis, including but not limited

16  to television, radio, consumer and trade reports and periodicals, promotional literature,

17  brochures, direct mail, email campaigns, interactive websites, and social media.

18      22.    As a result of KCMA's extensive use of the KCMA Marks to promote

19  its certification programs and association services, the KCMA Marks have attained a

20  national and global reputation for technical expertise and integrity, and they have

21  become a symbol of expertise, quality, durability, responsibility, and craftsmanship in

22  the cabinetry industry.

23      23.    The KCMA Marks are well-known and recognized by members of local,

24  state, and federal government bodies and industry trade associations as marks

COMPLAINT FOR TRADEMARK
INFRINGEMENT AND UNFAIR COMPETITION - 7

1   indicating testing, inspection, validation, certification, training, advising, and
2   sustainability services originating with KCMA.

3       24.     Because of the reputation and goodwill associated with KCMA and the
4   KCMA Marks, those marks and associated certifications have been well-known and
5   sought after since long before Defendants' use of the KCMA Marks and long before
6   engaging in the unlawful conduct alleged in this complaint. Stated otherwise, the
7   relevant consuming public has come to know and recognize the KCMA Marks as
8   uniquely identifying KCMA certifications and KCMA association services. The result
9   of which is invaluable goodwill for KCMA in and to the KCMA Marks.

10      25.     As demonstrated in the trademark registration chart above, KCMA has
11  senior rights to the KCMA Marks, as conclusively established by virtue of those
12  registrations. As such, there is no question that KCMA has priority in and to the
13  KCMA Marks.

14      26.     Furthermore, all of the registrations listed in the above chart are
15  incontestable under 15 U.S.C. 1115(b). As such, KCMA has exclusive rights in and
16  to the KCMA Marks throughout the United States in connection with its certification
17  and association services.

18  **KCMA'S PRODUCT CERTIFICATION PROCESS**

19      27.     Manufacturers may seek KCMA certification and listing in the KCMA
20  certification directory and on the KCMA website by having representative cabinets
21  tested and evaluated. KCMA conducts these tests and evaluations through authorized
22  third parties that determine whether the submitted cabinets comply with applicable
23  performance standards as set forth by KCMA.

24

COMPLAINT FOR TRADEMARK
INFRINGEMENT AND UNFAIR COMPETITION - 8

28.     If the cabinet samples comply with the applicable standards, and the producer of the cabinets has demonstrated the ability to ensure continued compliance with KCMA standards, KCMA will authorize the manufacturer to affix the KCMA Certification Mark to that cabinet once a license agreement for use of the mark and participation in the certification program is executed. The producer of that cabinet will also have the ability to advertise and claim that the cabinet is KCMA certified.

29.     Once a cabinet or cabinet line is deemed eligible for KCMA certification and receives certification, the certification is valid for six months. Prior to the expiration of the six-month certification, a cabinet or cabinet line is tested, and upon successful completion of the testing, certification is extended for one year. The certification remains active so long as the manufacturer provides samples of the certified cabinet line at least once per year to ensure continued compliance with KCMA standards. The producer must agree to allow a KCMA representative to select products from the producers existing inventory or product line, without prior notice, every other year.

30.     The KCMA certified producer is permitted to utilize the KCMA certification seals only on the products and product lines that have been certified. Once certification has lapsed or been terminated, the producer is prohibited from utilizing the KCMA certification seals for any products or for any purpose.

**DEFENDANTS' WRONGFUL CONDUCT**

31.     In late 2004 or early 2005, Defendants contacted KCMA to participate in KCMA's cabinet certification program.

32.     Defendants completed the application for KCMA certification, and shortly thereafter Defendants cabinets were inspected and preliminarily approved.

COMPLAINT FOR TRADEMARK
INFRINGEMENT AND UNFAIR COMPETITION - 9

Defendants entered into a license agreement with KCMA for use of the certification mark that outlined the respective parties' rights and responsibilities.

33.    Following its preliminary certification approval, Defendants purchased ten thousand KCMA certification seals to place on its cabinets in accordance with KCMA guidelines.

34.    Upon completion of all the necessary steps to certification, including execution of the license agreement, on April 11, 2005, Defendant AAA Cabinets & Millwork, Inc. was formally certified by KCMA for kitchen cabinets and bathroom vanity cabinets only. That certification expired on May 31, 2006.

35.    In accordance with the KCMA certification program and KCMA certification program participant license agreement, Defendants agreed, among other things, that they had no right to utilize the KCMA mark following termination or expiration of their certification.

36.    Notwithstanding these contractual obligations and KCMA's exclusive rights in and to the KCMA Marks, and well after KCMA's adoption, use, and registration of the KCMA Marks, Defendants continued to utilize and apply the KCMA certification seals on their products. Stated otherwise, Defendants adopted and used a mark identical to or substantially indistinguishable from the KCMA Certification Mark to falsely suggest that their goods are certified by KCMA. Furthermore, Defendants continued to hold out to the public and to potential clients that AAA Cabinets & Millwork, Inc. is KCMA certified.

37.    In addition, and in furtherance of its disregard for its contractual obligations and certification limitations, Defendants utilized and continue to utilize,

1  the KCMA certification seals on cabinets and cabinet lines that were never certified

2  for to begin with.

3      38.    On information and belief, Defendants have claimed to customers and

4  potential customers in advertising and sales pitches that it produces KCMA certified

5  cabinets. On information and belief, Defendants have won bids and qualified to

6  participate in cabinet manufacturing bids because of its untruthful claims of producing

7  KCMA certified cabinets.

8      39.    Defendants are using a counterfeit KCMA trademark and counterfeit

9  certification seals on its cabinets that falsely suggest that the Defendants' cabinets

10 have been inspected by and meet KCMA certification standards.

11     40.    Defendants' unauthorized use of the counterfeit KCMA trademark and

12 counterfeit KCMA certification seals trades off the goodwill of the KCMA Marks.

13     41.    Defendants cabinets are not certified by KCMA and have not been

14 checked or tested to ensure the cabinets meet KCMA's quality standards. As such,

15 these cabinets may place the user at risk. Indeed, depending on the application and

16 type of cabinet allegedly certified, cabinet consumers in high traffic situations such

17 as hospitality, healthcare, or multi-family housing units rely on KCMA certification

18 with the understanding that these cabinets have been tested and are of high quality.

19 For example, KCMA certified cabinets are load tested to determine if they are

20 capable of withstanding loads appropriate for a particular use or application.

21     42.    Defendants infringement, counterfeiting, and breach of contract has at all

22 times been knowing and willful.

23     43.    Defendants were on constructive notice of the KCMA Marks by virtue

24 of their federal registration.

44.    Defendants were on actual notice of the KCMA Marks by virtue of Defendants' execution of the certification license agreement and acceptance into the KCMA certification program.

45.    Each Defendants is aware that it never had permission to continue use of the KCMA Marks following expiration and termination of the KCMA certification. Nevertheless, each of the Defendants has repeatedly and intentionally used the counterfeit certification seals bearing the counterfeit KCMA Marks to place on their cabinets and to advertise and promote their cabinets.

46.    Upon information and belief, Defendants would continue using KCMA's Marks without authorization from KCMA, thereby continuing to confuse consumers regarding the certification status of their products, resulting in harm and damage to both KCMA and its goodwill and the consuming public.

## COUNT ONE

### Federal Trademark Infringement (15 U.S.C. § 1114)

47.    KCMA incorporates and realleges each and every allegation above as if fully set forth herein.

48.    The mark used by Defendants is identical to or substantially indistinguishable from the KCMA Certification Marks and KCMA Service Mark in appearance, sound, meaning, and commercial impression, such that the use thereof is likely to cause confusion, mistake, and deception as to the authorization and/or certification of Defendants' cabinets. As a result, the public is likely to be confused, deceived, and to assume erroneously that Defendants' cabinets have been certified by KCMA or that Defendants are in some way connected with, licensed, authorized, certified by, or affiliated with KCMA. Such a belief by consumers and such use by

Defendants will irreparably injure and damage KCMA and the goodwill and reputation symbolized by the KCMA Marks.

49.    Likelihood of confusion is enhanced by the fact that the KCMA Certification Mark and the KCMA Service Marks are strong, well-known, incontestable, and entitled to a broad scope of protection.

50.    Likelihood of confusion is also enhanced by the fact that the counterfeit KCMA Marks used by Defendants so prominently incorporate the key component— "KCMA."

51.    Defendants are not affiliated or connected with KCMA and have not been endorsed or sponsored by KCMA since 2006, nor has KCMA authorized products offered, sold, or intended to be sold by Defendants utilizing the counterfeit KCMA Marks since 2006.

52.    KCMA's United States Trademark Registrations set out above provide, at the very least, constructive notice to Defendants of the rights of KCMA in and to the KCMA Certification marks and the KCMA Service Mark.

53.    The KCMA certification program agreement that all certified participants are required to adhere to demonstrates that Defendants have had actual notice of KCMA's trademark rights, and Defendants have acknowledged those rights and agreed to their validity.

54.    Defendants' use of the Counterfeit Mark in connection with the Defendants' cabinets is likely to cause confusion, mistake, or to deceive consumers as to the authorization or certification of the goods, in violation of the Lanham Act, including but not limited to 15 U.S.C. § 1114.

55.     Consumers are likely to purchase or engage Defendants' products being offered under the guise of certification by KCMA because consumers believe Defendants' products to have been certified by KCMA, thereby resulting in a loss of goodwill and economic harm to KCMA.

56.     Upon information and belief, Defendants intentionally adopted and use the unauthorized and counterfeit KCMA mark so as to create consumer confusion, to deceive consumers, and to profit off of KCMA's reputation and goodwill that exists in the KCMA Marks.

57.     KCMA is informed and believes, and on that basis alleges, that Defendants have derived unlawful gains and profits from their infringing and unauthorized use of the KCMA Marks.

58.     The goodwill of KCMA's business associated with the KCMA Marks is of great value, and KCMA will suffer irreparable harm should Defendants' infringement be allowed to continue, the damage of which KCMA cannot be adequately compensated for at law.

59.     KCMA has no control over the quality of the goods offered by Defendants. Thus, the great value of the KCMA Marks is subject to damage by an entity it cannot control, and that has proven itself untrustworthy and incapable of abiding by KCMA's certification program requirements.

60.     Unless Defendants are enjoined by this Court from doing so, KCMA will continue to suffer irreparable harm and injury to its goodwill and reputation.

61.     Upon information and belief, Defendants have engaged in acts of infringement, with actual knowledge of KCMA's exclusive rights in and to the KCMA Marks, and Defendants continue in such acts of intentional infringement, thus entitling

1  KCMA to an award of treble damages, disgorgement of Defendants' profits, and

2  attorneys' fees and costs in bringing and maintaining this action, pursuant to Section

3  35(b) of the Lanham Act, 15 U.S.C. § 1117(b).

4  **COUNT TWO**

5  **Counterfeit of Registered Mark (15 U.S.C. § 1114)**

6  62.    KCMA incorporates and realleges each and every allegation above as if

7  fully set forth herein.

8  63.    KCMA owns valid and incontestable United States Trademark

9  Registrations for its KCMA Marks, as set forth above.

10  64.    Well before any of Defendants' complained-of actions were committed,

11  KCMA had continuously used the KCMA Marks throughout the United States in

12  connection with its certification program and related services.

13  65.    Defendants use an unauthorized version of the KCMA Certification

14  Mark that is identical to, or substantially indistinguishable from, the KCMA Marks.

15  66.    The KCMA Certification Mark is registered on the Principal Register as

16  a certification mark, and Defendants are intentionally using a counterfeit version of

17  this mark to falsely suggest that Defendants' cabinets have been certified by KCMA.

18  67.    KCMA did not authorize Defendants' current use of the unauthorized

19  KCMA Certification Mark, and such unauthorized use of the KCMA Certification

20  Marks and KCMA Service Marks is likely to confuse consumers into falsely believing

21  that Defendants' cabinets are authorized or certified by KCMA when, in fact, they are

22  not.

23

24

68.     Defendants' use of the counterfeit KCMA mark without consent from KCMA was and is a willful and intentional infringement of KCMA's registered KCMA Certification Mark and KCMA Service Marks.

69.     Defendants have profited from their acts of infringement. KCMA is entitled to recover Defendants' profits arising from the infringement, any damages sustained by KCMA arising from said infringement, as well as the costs of this action. KCMA also is entitled to an enhanced award of profits and/or damages to fully and adequately compensate it for Defendants' infringement. At its election, KCMA is also entitled to statutory damages.

70.     Defendants have caused and, unless enjoined by this Court, will continue to cause irreparable injury to KCMA that is not fully compensable in monetary damages. KCMA is therefore entitled to a permanent injunction enjoining and restraining Defendants from use of the KCMA Marks or any other mark that is confusingly similar to the KCMA Marks.

## **COUNT THREE**

### **Federal Unfair Competition and False Designation of Origin and False and Misleading Representations (15 U.S.C 1125(A))**

71.     KCMA incorporates and realleges each and every allegation above as if fully set forth herein.

72.     Defendants' use of the unauthorized KCMA mark constitutes unfair competition and a false designation of origin, false or misleading description of fact, or false representation of fact, each of which is likely to deceive customers and prospective customers into believing that Defendants' products offered for sale under

1  Defendants' use of the KCMA mark have been certified by KCMA, in violation of

2  Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

3      73.    Defendants' actions of applying unauthorized KCMA certification seals

4  on its products are likely to cause confusion, mistake, or deception among the public

5  as to the authorization or certification of Defendants' products offered for sale using

6  the unauthorized KCMA mark and certification seals, or to confuse the public into

7  believing that Defendants' products have the approval of KCMA, or are otherwise

8  affiliated, connected, associated with, or sponsored by KCMA, in violation of Section

9  43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

10     74.    More specifically, on information and belief, Defendants falsely

11 represented to third parties in bids that it was a member of KCMA and that its products

12 were inspected and certified by KCMA.

13     75.    KCMA has no control over the nature and quality of Defendants'

14 products offered for sale utilizing the unauthorized KCMA mark. Any failure, neglect,

15 default, or harm caused by Defendants products will thus reflect adversely on KCMA.

16     76.    Upon information and belief, Defendants intentionally adopted and use

17 the unauthorized KCMA trademarks so as to create consumer confusion and to profit

18 off of KCMA's reputation and goodwill that it has acquired in the KCMA Marks.

19     77.    KCMA is informed and believes, and on that basis alleges, that

20 Defendants have derived unlawful gains and profits from its infringement of the

21 KCMA Certification Marks and the KCMA Service Mark.

22     78.    The goodwill of KCMA's business under the KCMA Marks is of great

23 value, and KCMA will suffer irreparable harm to its trade reputation and goodwill,

24

1    should Defendants' acts of unfair competition and false representation and
2    designations be allowed to continue.

3    79.    KCMA has no control over the quality of the goods offered by
4    Defendants. Thus, the value of the KCMA Certification Marks and the KCMA Service
5    Mark is subject to damage by entities and individuals it cannot control. Unless
6    enjoined by this Court from so doing, Defendants will continue to engage in acts of
7    unfair competition, false representation and designation to the irreparable damage and
8    injury of KCMA.

9    80.    Upon information and belief, from the outset, Defendants have engaged
10   in acts of unfair competition, false representation and designation, with actual
11   knowledge of the exclusive rights of KCMA in and to the KCMA Certification Marks
12   and the KCMA Service Marks, and Defendants continue in such acts of unfair
13   competition and intentional false representation and designation, thus entitling KCMA
14   to an award of its actual damages, disgorgement of Defendants' profits, and attorneys'
15   fees and costs in bringing and maintaining this action, pursuant to Section 35(a) of the
16   Lanham Act, 15 U.S.C. § 1117(a).

17                                    **COUNT FOUR**

18          **Washington Consumer Protection Act (R.C.W.A. § 19.86.020 *et seq.*)**

19   81.    KCMA incorporates and realleges each and every allegation above as if
20   fully set forth herein.

21   82.    Defendants have engaged in unfair and deceptive practices within the
22   meaning of the Washington Consumer Protection Act, R.C.W.A. § 19.86.020 et seq.,
23   by passing off its products as those Certified by or approved by KCMA. This conduct
24   continues to this date.

COMPLAINT FOR TRADEMARK
INFRINGEMENT AND UNFAIR COMPETITION - 18

83.     Defendants' unlawful actions affect the public interest because by using KCMA's Certification Mark and the KCMA Service Marks, Defendants have caused a likelihood of confusion or misunderstanding as to the source, origin, or sponsorship of the parties' respective products.

84.     Defendants' unlawful actions also affect the public interest by causing a misunderstanding as to the affiliation, connection or association of Defendants with KCMA.

85.     Defendants' unlawful conduct relating to KCMA's product certification is causing and is likely to cause substantial injury to the purchasing public and trade and to KCMA, was conducted in trade and commerce, and has the potential for repetition.

86.     Defendants' unlawful conduct has irreparably damaged KCMA in its business and property and will continue to damage KCMA unless restrained by this Court. KCMA is without an adequate remedy at law. Pursuant to R.C.W.A. § 19.86.090, KCMA is entitled to, among other things, an order permanently enjoining and restraining Defendants from advertising, manufacturing, and/or selling products bearing the KCMA Marks.

87.     Defendants' unlawful conduct has proximately caused KCMA to suffer damages, and KCMA is entitled to recover three times its actual damages, costs, and reasonable attorneys' fees pursuant to R.C.W.A. § 19.86.090.

## COUNT FIVE

### Unjust Enrichment

88.     KCMA incorporates and realleges each and every allegation above as if fully set forth herein.

89.     Upon information and belief, Defendants have received benefits from their use of KCMA's proprietary Certification Mark and the KCMA Service Marks.

90.     The benefits of the improper use of KCMA's Marks must be returned to KCMA, or KCMA should be compensated for the benefits conferred on Defendants.

91.     It is against equity for Defendants to retain the benefits of unauthorized use of KCMA's Marks and to profit by their use without compensating KCMA.

92.     KCMA is entitled to damages in an amount to be proven at trial to prevent Defendants from being unjustly enriched.

## ALLEGATIONS OF DAMAGE COMMON TO ALL CLAIMS

93.     KCMA incorporates and realleges each and every allegation above as if fully set forth herein.

94.     KCMA has suffered, is suffering, and will continue to suffer irreparable harm and damage as a result of Defendants' wrongful conduct. Defendants will, unless restrained and enjoined, continue to act in the unlawful manner complained of herein, all to the irreparable damage of the business and reputation of KCMA. KCMA's remedy at law is not adequate to compensate it for the injuries suffered and threatened.

## DEMAND FOR JURY TRIAL

95.     Pursuant to Fed. R. Civ. P. 38(b), Plaintiff requests a trial by jury on all issues properly triable by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

A.     Enter a judgment in favor of KCMA and against Defendants, jointly and severally, on all Counts alleged herein;

B.    Designate this action as an exceptional case entitling KCMA to an award of its reasonable attorneys' fees incurred as a result of this action, pursuant to 15 U.S.C. § 1117;

C.    Issue permanent injunctive relief against Defendants, and each of them, and their respective officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert of participation with Defendants, enjoining and restraining them from:

(i)    Imitating, copying, or making any other infringing use of the KCMA Marks and any other mark now or hereafter confusingly similar to the KCMA Marks;

(ii)   Manufacturing, assembling, producing, distributing, offering for distribution, circulating, selling, offering for sale, advertising, importing, promoting, or displaying any simulation, reproduction, counterfeit, copy, or colorable imitation of the KCMA Marks, or any mark confusingly similar thereto;

(iii)  Using any false designation of origin or false description or statement that can or is likely to lead the trade or public or individuals erroneously to believe that any product has been provided, produced, distributed, offered for distribution, circulation, sold, offered for sale, imported, advertised, promoted, displayed, licensed, sponsored, approved, certified or authorized by or for KCMA, when such is not true;

(iv)   Using the names, logos, or other variations therefor of the KCMA Marks in any of Defendants' trade, corporate names, or products;

(v)    Engaging in any other activity constituting an infringement of the KCMA Marks, or the rights of KCMA in, or right to exclusively control or to exploit the KCMA Service Marks and the KCMA Certification Mark; and

(vi)    Assisting, aiding, or abetting any other person or business entity in engaging in or perform any of the activities referred to in subparagraphs (i) through (v) above;

D.    Order Defendants, at their own expense, to recall all products and marketing, promotional, and advertising materials that bear or incorporate an unauthorized KCMA mark, or any mark confusingly similar to the KCMA Marks that have been manufactured, distributed, sold, or shipped by Defendants or on their behalf, and to reimburse all consumers from which said materials are recalled;

E.    Order Defendants to immediately produce and turn over to KCMA's counsel, all products, labels, signs, prints, packages, molds, plates, dies, wrappers, receptacles, and advertisements in their possession or under its control, bearing the unauthorized KCMA Marks, and/or any simulation, reproduction, copy, or colorable imitation thereof, and all plates, molds, matrices, and any other means of making the same;

F.    Order Defendants to publish notice to all customers or members of the trade who may have seen or heard of Defendants' use of the unauthorized KCMA marks, which notice shall disclaim any connection with KCMA and shall advise them of the Court's injunction order and of Defendants' discontinuance from all use of the KCMA Marks;

G.     Order Defendants to file with this Court and to serve upon KCMA within thirty (30) days after service upon Defendants of an injunction in this action, a written report by Defendants, under oath, setting forth in detail the manner in which Defendants have complied with the injunction and requests set forth above;

H.     Order Defendants to pay the costs of corrective advertising;

I.     Order Defendants to hold in trust, as constructive trustees for the benefit of KCMA, its profits obtained from its provision of the Defendants' products offered for sale under its use of the unauthorized KCMA marks;

J.     Order Defendants to provide KCMA a full and complete accounting of all amounts due and owing to KCMA as a result of Defendants' illegal activities;

K.     Order Defendants to pay the general, special, actual, and statutory damages of KCMA as follows:

(i)     KCMA's damages and Defendants' profits pursuant to 15 U.S.C. § 1117(a), trebled pursuant to 15 U.S.C. § 1117(b) for Defendants' willful violation of the federally registered trademarks of KCMA; and

(ii)     If KCMA so elects, statutory damages of up to $2,000,000 per counterfeit mark, per type of product sold, offered for sale, or distributed, pursuant to 15 U.S.C. § 1117(c);

L.     Order Defendants to pay KCMA both the costs of this action and reasonable attorneys' fees incurred by KCMA in prosecuting this action, pursuant to 15 U.S.C. § 1117(a).

/ / /

1    M.    Award KCMA its prejudgment interest; and

2    N.    Award such other and further relief as the Court deems just and proper.

3

4    DATED this 27th day of August, 2019.

5

6                                        s/ Rhett V. Barney
                                         RHETT V. BARNEY, WSBA #44764
                                         LEE & HAYES, P.C.
7                                        601 W. RIVERSIDE AVE., STE. 1400
                                         SPOKANE, WA 99201
                                         PHONE: (509) 324-9256
8
                                         ANDREW G. STRICKLAND,
9                                          PRO HAC VICE TO BE FILED
                                         LEE & HAYES, P.C.
10                                       1175 PEACHTREE STREET N.E.
                                         100 COLONY SQUARE, STE. 2000
                                         ATLANTA, GA 30361
11
                                         ATTORNEYS FOR PLAINTIFF KITCHEN CABINET
12                                       MANUFACTURERS ASSOCIATION

13

14

15

16

17

18

19

20

21

22

23

24